Charles A. "Z" BUDA et al., Plaintiffs,

v.

William SAXBE et al., Defendants.

No. CIV-2-74-103.

United States District Court,
E. D. Tennessee,
Northeastern Division.

Oct. 16, 1974.
Supplemental Opinion Jan. 6, 1975.

Philip P. Durand, Knoxville, Tenn., for plaintiff.

Helen Lessin, Dept. of Justice, Washington, D. C., for defendants William Saxbe and Terry A. Rivkind.

Lacy West, Kingsport, Tenn., for defendant Cassell Bros.

W. Henry Haile, Asst. Atty. Gen., State of Tennessee, Washington, D. C., and Carleton Smith, Greeneville, Tenn., for State of Tenn.

Philip P. Durand, Knoxville, Tenn., Jim W. Stambaugh and John F. Dugger, Morristown, Tenn., for counterclaim defendants.

## MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

This is an action for declaratory and injunctive relief, to prevent the continuance of construction by the state of Ten-

nessee of its regional correctional penal institution in Hamblen County, Tennessee. At a hearing herein on September 16, 1974, there was a general agreement of Court and respective counsel that any jurisdiction of this matter in this Court rests upon the provisions of the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. §§ 4321, et seq. However, the Court considered also the question of whether jurisdiction is present under the review provisions of the Administrative Procedure Act, 5 U.S.C. §§ 701, et seq.

■ The defendants Honorable Winfield Dunn, Mr. Mark Luttrell, the state of Tennessee (state), and Cassell Bros., Inc., which filed counterclaims herein, admitted the jurisdiction of this Court. The defendants Honorable William Saxbe and Mr. Terry A. Rivkind neither admitted nor denied such jurisdiction. No defendant moved for a dismissal for want of jurisdiction in this Court; but, as it is obliged to do, *Williams v. W. R. Grace & Company,* D.C.Tenn. (1966), 252 F.Supp. 821, 823[7], the Court noticed its want of jurisdiction of the original claim herein on its own motion.

NEPA requires all federal agencies to file a detailed environmental impact statement (eis) in connection with any " * * * major federal. * * * " action which significantly affects the quality of the human environment. 42 U.S.C. § 4332(C). The plaintiffs contend that the federal agency, the Law Enforcement Assistance Administration (LEAA), of which the defendant Mr. Rivkind is the responsible federal official, was required to file thereunder an eis in making a block grant to the state under the Omnibus Crime Control and Safe Streets Act of 1968 (Safe Streets Act), 42 U.S.C. §§ 3701, et seq., for the construction of a series of regional correctional centers throughout the state.

The determinative question presented, and apparently one of first impression judicially under the peculiar facts, is whether the federal grant involved converted the state's Hamblen County project into a "major federal" action, for purposes of NEPA. It is stipulated that no federal funds have been expended on the Hamblen County project, and that the entire construction costs thereof have been, and are being, borne by the state.

The state submitted to LEAA a comprehensive five-year plan. Included therein were general plans of the state to construct the aforementioned series of correctional centers. LEAA approved the state's plan and made the state's law enforcement planning agency (TLEPA) a grant of so-called "part C funds" in connection with such construction. One of such centers was planned to be constructed in the Tri-Cities area of the state.[1] There was no plan included for the construction of a center in Hamblen County, although the plans included one for the East Tennessee area. Centers were proposed at the existing state penal farm in Shelby County, in the far western section of the state, and in the Chattanooga area, in East Tennessee.

■ Although the state at no time requested or received funds for the construction of a regional correctional center in Hamblen County, the plaintiffs urge that the project therein is a "major federal" action, because LEAA granted part C block funds to the state for the purpose of constructing regional correctional centers. They insist that such construction should be enjoined until LEAA files an eis in compliance with NEPA. This contention lacks merit.

---

1. The Tri-Cities area of Tennessee, the Court notices judicially, encompasses the area in which the cities of Bristol, Kingsport and Johnson City are located. The former two cities are located in Sullivan County, and the latter in Washington County, Tennessee. The focal point of such area is the Tri-Cities airport which is located approximately 20 miles from each of those cities. Hamblen County is not deemed a part of the Tri-Cities area; it's county seat and principal city is Morristown, which is located some 70 miles from the Tri-Cities airport.

The plaintiffs rely heavily upon two decisions of the Court of Appeals for the Fourth Circuit: *Ely v. Velde (Ely I),* C.A. 4th (1971), 451 F.2d 1130, and *Ely v. Velde (Ely II),* C.A. 4th (1974), 497 F.2d 252. Those decisions are distinguishable on the facts from our factual situation.

Therein, the commonwealth of Virginia (Virginia) submitted a comprehensive plan which included specifically a request for funds for the construction of a regional correctional center at a particular place. LEAA made Virginia a block grant under its plan. The Court held that LEAA was duty-bound in that situation to comply, *inter alia,* with the procedural requirements of NEPA. *Ely I, supra,* at 1139, V. It was stated in oral argument on the appeal therein that, if federal funds for the construction of such center were not forthcoming, Virginia would build the center without them. *Ibid.,* at 1137, no. 17. After the appellate decision in *Ely I, supra,* and before the decision in *Ely II, supra,* Virginia withdrew its request for federal funds for this particular center after adverse comment was made on LEAA's eis for this project and undertook to reallocate these same funds to others of its projects. It was held in *Ely II, supra,* that Virginia could not retain the fruits of the resulting federal-state partnership in this manner, relying on the rationale of *Named Ind. Mem. of San Antonio Con. Soc. v. Texas Hy. Dept.,* C.A. 5th (1971), 446 F.2d 1013.

Here, the state's comprehensive plan did not include any mention of the construction of the Hamblen County project. LEAA has never been called upon to approve or disapprove such project. No LEAA funds have been granted or utilized in its construction. The state is utilizing its part C block grant funds to build centers in Shelby County and in the Chattanooga area (Marion County).

The state could not find a suitable location for a correctional center in the Tri-Cities area. Its officials decided to abandon its plan for such a center in the Tri-Cities area and sought a site elsewhere. A suitable site was found in Hamblen County. As state officials were apprehensive that a satisfactory eis might not be forthcoming for such a new location, and as it was recognized that an eis would be necessary for the state to obtain federal funds with which to build a project in Hamblen County, its officials decided to forego any application for a federal grant for this project and to build it with its own funds.[2] Certainly, as a sovereignty the state had a right to build its center with its own funds anywhere in the state its officials selected.[3]

■ The requirements of NEPA are inapplicable to the state. 42 U.S.C. § 4332; *Ely I, supra,* at 1339[8]. NEPA has no application to a project unless.. the action is federal. *City of Boston v. Brinegar,* D.C.Mass (1974), 6 ERC 1961, 1965. The Court finds that the Hamblen County project of the state does not now, and may never, constitute a "major federal" action. Consequently, this Court " * * * has no present power to enjoin the construction * * *" *Ibid.,* 6 ERC at 1966.

It results that the plaintiffs Mr. Charles A. "Z" Buda, et al. must be, and they hereby are DENIED all relief. Rule 58(1), Federal Rules of Civil Procedure.

A more troublesome question is whether the respective plaintiffs-by-counterclaim are entitled to proceed herein. The state interposed several counter-

---

2. " * * * This facility will serve the area of Sevier, Cocke, Greene, Hawkins, Hancock, Clairborne, Union, Grainger, Jefferson and Hamblen Counties. * * *" Exhibit no. 29, letter of Mr. Luttrell.

3. The Court finds also that no "partnership" was created between the federal and state governments for the construction by the state of its Hamblen County project. After the sub-mission by the state of its comprehensive plan, 42 U.S.C. § 3781(m), and its approval, LEAA was mandatorily required to make a grant to the state on the basis of its population, 42 U.S.C. § 3733, unless LEAA found that there had been a substantial failure of the state to comply with the Safe Streets Act, regulations or guidelines promulgated by LEAA, or the state's plan itself. 42 U.S.C. § 3757.

claims which all of the defendants-by-counterclaim (except Mr. Gale Jarnigan) have moved to dismiss as failing to state a claim on which relief can be granted. Rule 12(b)(6), Federal Rules of Civil Procedure. The Court treats each such motion as a motion to dismiss for want of jurisdiction. Rule 12(b)(1), Federal Rules of Civil Procedure.

The plaintiff-by-counterclaim state undertook to invoke the jurisdiction of this Court under 28 U.S.C. §§ 1343, 1337, 1331, 42 U.S.C. §§ 1983, 1985. The state is not a " * * * citizen of the United States or other person within the jurisdiction thereof *. * * " within the contemplation of 42 U.S.C. § 1983;[4] cf. *Phipps v. Armour,* D.C. Tenn. (1971), 335 F.Supp. 768, 769[1], holding that the state of Tennessee is not a "person" within the meaning of the Civil Rights Act. Neither is the state " * * * any person * * * ", " * * * class of persons * * * ", " * * * Any citizen * * * " or " * * * party * * * " within the meaning of 42 U.S.C. § 1985(3).[5] *United States v. People of State of Illinois,* C.A. 7th (1965), 343 F.2d 120[1]. Thus, this Court lacks jurisdiction of the state's counterclaim under 28 U.S.C. § 1343. There is no act of the Congress regulating commerce or protecting trade and commerce against restraints and monopolies involved, so this Court lacks jurisdiction of the state's counterclaim under 28 U.S.C. § 1337. Likewise, there is no right or immunity created by the Constitution or laws of the United States involved, which depends upon judicial construction, so that this Court lacks jurisdiction of the state's counterclaim under 28 U.S.C. § 1331. *Gully v. First Nat. Bank* (1936), 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70, 72 (headnote 2). The plaintiff-by-counterclaim state of Tennessee therefore, hereby is denied all relief upon its counterclaims. Rule 58(1), Federal Rules of Civil Procedure.

The plaintiff-by-counterclaim Cassell Brothers, Inc. failed to respond to the motion of the defendants-by-counterclaim for a dismissal. Local Rule 12(b). Unless such response is made within 10 days herefrom, such failure will be deemed a waiver of opposition to such motion. Local Rule 11(f).

## SUPPLEMENTAL MEMORANDUM OPINION AND ORDER

The plaintiff-by-counterclaim Cassell Brothers, Inc. (Cassell) has responded to the motion of the defendants-by-counterclaim for a dismissal of its counterclaim on the ground that the plaintiff-by-counterclaim failed to state a counterclaim on which relief can be granted. Rule 12(b)(6), Federal Rules of Civil Procedure. Cassell has also restated its counterclaim.

Cassell claims, first, that the defendants, who are the mayor of the City of Morristown, Tennessee, the chairman of the quarterly county court of Hamblen County, Tennessee (of which Morristown is the county seat), and 15 other persons who are allegedly members of an organization known as Citizens Against the

---

4. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

5. "If two or more persons in any State or Territory conspire * * * for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws * * * in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of the conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege as a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators." 42 U.S.C. § 1985(3).

Proposed Prison, and among which is included the sheriff of such county, all acting under color of Tennessee law, conspired for the purpose of depriving Cassell of the equal protection of the laws, Constitution, Fourteenth Amendment, and for the purpose of manipulating the constituted law enforcement agencies of the area so as to deprive Cassell of the protection of such agencies from discriminatory acts of individuals, and committed several overt acts in furtherance of the object of such conspiracy.

It is provided:

> * * * If two or more persons in any State * * * conspire * * * for the purpose of depriving, either directly or indirectly, any person * * of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State * * * from giving or securing to all persons within such State * * * the equal protection of the laws; * * * in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his property * * *, or deprived of having and exercising any right or privilege or a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). Cassell also claims that the defendant-by-counterclaim Mr. Jarnigan, the aforementioned sheriff, is liable to it under the provisions of 42 U.S.C. § 1986, which provides in pertinent part:

> * * * Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title [42], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be

committed, shall be liable to the party injured * * * for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case. * * *

■ Corporations may not recover for deprivation of rights which are incident to "citizenship." " * * * Natural persons, and they alone, are entitled to the privileges and immunities which § 1 of the Fourteenth Amendment secures for 'citizens of the United States.' * * * " *Hague v. Committee for Industrial Organization* (1939), 307 U.S. 496, 514, 59 S.Ct. 954, 963, 83 L.Ed. 1423, 1436. A corporation, being an artificial person, cannot be said to be deprived of privileges and immunities secured for natural citizens of the United States. *Ibid.,* 307 U.S. at 527, 59 S.Ct. at 969, 83 L.Ed. at 1443 (concurring opinion), cited in *Finnish Workers' Federation v. Horrocks,* D.C.Wash. (1941), 42 F.Supp. 411 (holding that a corporation may not claim the benefit of 8 U.S.C. § 48 (now 42 U.S.C. § 1986)).

Although a " * * * corporation is a 'person' within the meaning of the equal protection * * * " clause of the Constitution, Fourteenth Amendment, *Grosjean v. American Press Co.* (1936), 297 U.S. 233, 244, 56 S.Ct. 444, 447, 80 L.Ed. 660, 666 (headnote 2), Cassell has not alleged factually such a deprivation. There is no allegation that the law was applied to the plaintiff any differently than to others similarly situated. See *Hodge v. Stout,* D.C.Tenn. (1974), 377 F.Supp. 131, 135[1]. " * * * So long as the law applies to all alike, the requirements of equal protection are met. * * * " *Ibid.*

■ A liberal reading of the counterclaims herein reveals only an averment of a tort, i. e. the unlawful procurement of the breach of a contract. See T.C.A. § 47–15–113. " * * * Mere violation of a state statute does not infringe the federal Constitution. * * * " *Snowden v. Hughes* (1944),

321 U.S. 1, 11, 64 S.Ct. 397, 402, 88 L.Ed. 497, 504 (headnote 8), rehearing denied (1944) 321 U.S. 804, 64 S.Ct. 778, 88 L.Ed. 1090. " * * * It was not intended by the Fourteenth Amendment and the Civil Rights Acts that all matters formerly within the exclusive cognizance of the states should become matters of national concern. * * * A construction of the equal protection clause which would find a violation of federal right in every departure by state officers from state law is not to be favored. * * * " *Ibid.,* 321 U.S. at 11–12, 64 S.Ct. at 403, 88 L.Ed. at 505 (headnote 10).

Accordingly, the motion of the defendants-by-counterclaim for a dismissal of this action for the failure of Cassell to state a counterclaim upon which relief can be granted hereby is granted, and such counterclaim hereby is dismissed for such reason.